UNITED STATES DISTRICT COURT

NEW JERSEY DISTRICT COURT

| | |
|---|---|
| WILLIAM FLINN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| **Plaintiff,** | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| DOLGENCORP, LLC, (d/b/a DOLLAR GENERAL, CORPORATION) | |
| **Defendant.** | |

Plaintiff William Flinn ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief including based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of New Jersey, to redress the unlawful commercial practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar General, Corporation), (hereinafter "Dollar General" and/or "Defendant") at its stores whereby Dollar General: a) sells an entire line of company-branded motor oils (labeled "DG") that are obsolete and potentially harmful to its customers' automobiles; b) positions this line of obsolete motor oils immediately adjacent to the standard- and premium-quality motor oils sold by its competitors; and c) fails to adequately warn its customers that DG motor oil is unsuitable for the vast majority, if not all, of its customers to use in their modern day automobiles.

2.   Dollar General engaged in these unlawful, unconscionable, misrepresentative, fraudulent and/or deceptive business practices in connection with the sale and/or advertisement of this merchandise in violation of New Jersey's Consumer Fraud Act ("CFA"), *N.J.S.A.* 56:8-1 *et seq.,* the Uniform Commercial Code and certain common law standards.

## PARTIES

3.   Plaintiff William Flinn is an individual adult resident citizen of the City of Woodbury, County of Gloucester, State of New Jersey and is a member of the Class alleged herein.

4.   Plaintiff purchased Dollar General's 10W-30 store brand motor oil from Dollar General's store in Woodbury, New Jersey, on approximately three occasions over the course of 2014 and 2015 for his 2003 Dodge Ram 2500.

5.   Defendant DOLGENCORP, LLC, d/b/a Dollar General, Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

6.   At all relevant times, Defendant produced, marketed, advertised and sold its obsolete DG-branded motor oil in its stores throughout the United States, including in the State of New Jersey, utilizing unconscionable, deceptive, fraudulent, false and/or misrepresentative sales practices in connection with the sale, marketing and/or deceptive placement of this merchandise. These practices were employed with the intent to deceive Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles, knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

7.   As such, purchasers of DG-branded motor oil have suffered ascertainable losses as a result of Defendant's unconscionable, deceptive, fraudulent, and misrepresentative acts.

8.  Defendant maintains approximately 76 stores throughout the State of New Jersey.  As such, New Jersey courts maintain a significant interest in regulating Defendant's conduct which emanates from New Jersey, yet deceives consumers nationwide.

## JURISDICTION AND VENUE

9.  Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendant's home state, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

10. This Court has jurisdiction over the Defendant named herein because Defendant is a foreign corporation or association authorized to do business in New Jersey and registered with the New Jersey Secretary of State, does sufficient business in New Jersey, and has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its merchandise in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

11. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district

12. In addition, Defendant operates approximately 76 stores in New Jersey and has received substantial compensation from New Jersey consumers who purchase goods from Defendant.

## FACTUAL ALLEGATIONS

13. Dollar General operates a chain of variety stores headquartered in Goodlettsville, Tennessee.  As of January 2015, Dollar General operated over 12,198 stores in 43 states, including 76 stores in the State of New Jersey.

14. Dollar General is a discount retailer focused on low and fixed income consumers in small markets.  Dollar General's business model includes locating its stores in rural, suburban communities, and in its more densely populated markets.  Dollar General's customers are generally from the neighborhoods surrounding the stores.  Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

15.  Dollar General offers basic, every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities, generally in their own neighborhoods.

16. In addition to offering name brand and generic merchandise, Dollar General manufactures and markets its own lines of inexpensive household products, which bear the designation "DG."   DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

17. Dollar General's DG Auto line consists of three types of obsolete motor oils:  DG SAE 10W-30, DG SAE 10W-40 and DG SAE-30 that fail to protect and can actively damage, modern day automobiles.

18. Motor oils are supposed to properly lubricate the engines of the automobiles driven by individuals.  Their main function is to reduce wear on an engine's moving parts.  Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

19. Motor oils have evolved in parallel with the automobiles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

20. Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines. Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.[1]

21. Defendant engaged in unconscionable, unlawful, deceptive, sharp and/or fraudulent acts and/or omissions in connection with the sale of less expensive obsolete motor oil that is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers.

22. Dollar General also engages in the unfair, unlawful, deceptive, sharp and/or fraudulent sales practice of concealing the obsolete and harmful nature of its motor oil from its customers through deceitful product placement tactics and misleading labels which obscure a critical fact from Dollar General's customers:  Dollar General's motor oil is unfit for and wholly obsolete in the vehicles driven by the vast majority, if not all, of its customers.

23. Dollar General's in-house motor oils use the same or similar SAE nomenclature on the front of its labels (e.g., 10W-30, 10W-40, SAE 30) as do the other mainstream, non-harmful, and actually useful brands of motor oil sold by Dollar General.   Dollar General places its DG brand motor oil next to these brand motor oil products on its shelves.

---

[1] *See, e.g.* The Petroleum Quality Institute of America, *Some Engine Oils Currently on the Shelves Can Harm Your Engine,* http://www.pqiamerica.com/apiserviceclass.htm.

24.  Additionally, the front label of DG's SAE 10W-30 and SAE 10W-40 motor oils says, "Lubricates and protects your engine."

25.  The labels of all "DG" brand motor oils also contain a prominent checkered flag on the front, suggestive of auto racing and winning.

26.  However, among the small print on the back label of Dollar General's motor oils is the statement that DG SAE 10W-30 and DG SAE 10W-40 are admittedly "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" and that DG SAE 30 is admittedly "not suitable for use in most gasoline powered automotive engines built after 1930," and its "use in modern engines may cause unsatisfactory engine performance or equipment harm."

27.  Dollar General conceals this language by rendering it in small font and confining it to the product's back label, which is not visible when the products are on the store shelves.

28.  Dollar General further conceals this language by placing it below a misleading and contradictory message regarding the product.  For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads: "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, antiwear performance, and protection against deposits, rust and corrosion."  For the DG SAE 30 product, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

29.  Few, if any, Dollar General customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that

these motor oils are not safe for cars manufactured within the past 27 years, or in the case of Dollar General's DG SAE 30, the past 85 years.

30. Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner. Specifically, Dollar General places similar quantities of its in-house brand motor oils, DG SAE 10W-30, DG SAE 10W-40 and DG SAE 30, none of which is suitable for modern-day automobiles, adjacent to an array of other motor oils which are suitable for modern-day vehicles. The photograph below illustrates how Dollar General effects this deception:



As the photograph above illustrates, Dollar General places its in-house brand motor oils on the same shelves, in the same or similar quantities, as PEAK, Pennzoil, Castrol and other legitimate motor oils that are suitable for modern-day automobiles. Each type of motor oil uses the SAE nomenclature and checkered flag on the front, *e.g.*, 10W-40. The bottle also contains the same kind of shape to allow an easy pour into a car engine. The only apparent difference being the price, as Dollar General's motor oils are less expensive than the others.

31. Defendant's product display and packaging conceals the fact that these DG-brand motor oils have an extremely obscure and limited use and are likely to cause damage to the engines of most of the consumers purchasing motor oil. Instead, by using this deceptive method of product placement, Dollar General misleads consumers into thinking that the quality of the Dollar General-brand motor oils is the same or similar to that of the other motors oils sold by Dollar General.

32. Dollar General also fails to warn its customers adequately of the obsolete nature of DG-branded motor oils or of the dangers DG-branded motor oils pose to the very automobiles its customers are trying to protect by purchasing Dollar General's motor oil. An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of Dollar General motor oils. But Dollar General provides its customers with no such conspicuous warnings. Instead, the company buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

33. DG SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



34. DG SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



35. DG SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG SAE 30's back label which includes the warnings,

"IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED MOTORED ENGINES

BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY

ENGINE PERFORMANCE OR EQUIPMENT HARM":



36. Dollar General's entire line of low-cost motor oil is unsuitable for the modern-day

vehicles driven by its customers and has no business being sold by Dollar General in this

deceptive manner, except that Dollar General is successfully deceiving a sufficient number of

customers to make this fraudulent practice worthwhile.  It is unfair, unlawful, deceptive, sharp

and/or fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil in

this manner that is unfit for, and presents concrete dangers to, the automobiles driven by the vast

majority of its customers.

37.   Dollar General knew or should have known that its customers are being deceived by its marketing strategy based on the quantity of its obsolete DG motor oil sold compared to the limited number of automobiles for which these oils are appropriate.

38. New Jersey consumer protection laws are designed to protect consumers from this type of deceptive advertising and predatory conduct.

39. Defendant's unfair, unlawful, unconscionable, misleading and deceptive course of conduct victimized all purchasers of Dollar General's motor oil from Dollar General, throughout the country and in the State of New Jersey.

40. Defendant's scheme to deceive and defraud consumers violates the New Jersey's Consumer Fraud Act ("CFA"), *N.J.S.A.* 56:8-1, *et seq.,* and consumers' contractual rights.

41. As a direct and proximate result of Dollar General's deceptive, unlawful, misleading, fraudulent and unconscionable practices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages.  Indeed, the products are useless in all but the most outdated automotive engines.  Had Plaintiff and Class Members not been deceived by Defendant they would not have purchased this virtually obsolete oil.

42.  In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG-branded motor oil and have suffered and will continue to suffer economic damage as a result.

43. Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive, unconscionable, unlawful, fraudulent, sharp and misleading practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.